IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TODD WHITE | ) |
| | ) |
| Plaintiff, | ) No. 3:10-cv-00863 |
| | ) Chief Judge Haynes |
| v. | ) |
| | ) |
| GAYLE RAY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Todd White, filed this action under 42 U.S.C. § 1983 against the Defendants: Ricky Bell, individually and in his official capacity as Warden of the Riverbend Maximum Security Institution; and Joel Rader, Joshua McCall, Gaelan Doss, Sean Stewart, Bryan Baldwin, Gregory Garner, and James Bossow, individually and in their official capacities as correctional officers at the Riverbend Maximum Security Institution ("the Officers"). Plaintiff's claims arise out of injuries he suffered, allegedly at the hands of certain of the Defendants, during an extraction from his cell at the Riverbend Maximum Security Institution ("RMSI"), where he was an inmate. The gravamen of Plaintiff's claim is that: (1) the Defendant Officers violated his Eighth and Fourteenth Amendment rights by physically beating him in the process of extracting him from his cell, resulting in injuries which required Plaintiff to be transported to the hospital; and (2) the Defendant Warden violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to adequately train and supervise the Warden's staff. Before the Court are Defendant Bryan Baldwin's motion for summary judgment (Docket Entry No. 161) and the motion to dismiss or for summary judgment of Defendants Ricky

1

Bell, James Bossow, Gaelan Doss, Gregory Garner, Joel Rader, Jr. and Sean Stewart (Docket Entry No. 173).

Defendant Baldwin asserts that: (1) he can only be liable for his failure to intervene in the alleged use of excessive force against Plaintiff if he observed or had reason to know that the excessive force was being used, and had a realistic opportunity to intervene to prevent it from occurring; (2) because he did not know or have reason to know that excessive force was being used he did not have a realistic opportunity to intervene to prevent harm from occurring; and (3) he is entitled to qualified immunity as an officer acting in his official capacity who did not violate a clearly established statutory or constitutional right. (Docket Entry No. 162, 11-16). In response, Plaintiff contends that Defendant Baldwin is in fact liable for his failure to intervene because, in essence, it was his decision whether or not to perform the cell extraction, and according to TDOC policy, the cell extraction should not have been performed; as a result, he is liable for the excessive use of force that occurred in the course of the cell extraction. (Docket Entry No. 199, 15-20). Plaintiff further contends that Defendant Baldwin is not entitled to summary judgment on the issue of qualified immunity, because an issue of material fact exists regarding whether Defendant Baldwin violated Plaintiff's clearly established constitutional rights. Id.

Defendants Bell, Bossow, Rader, Doss, Garner, and Stewart contend that: (1) Defendant Bell has been sued on the basis of respondeat superior, and that is not sufficient basis for liability under 42 U.S.C. § 1983; (2) Defendant Bossow was never in a position to harm Plaintiff, nor was he in a position to stop any harm done to Plaintiff; (3) Defendant Garner was never in a position to harm Plaintiff, nor was he in a position to stop any harm done to Plaintiff; (4) Defendants Doss, Rader, and Stewart did not subject Plaintiff to the excessive use of force, nor could they have prevented the

2

use of force by Corporal Joshua McCall (who is also a named Defendant, but who is not a party to any of the motions currently before the Court); (5) Defendants Bell, Bossow, Rader, Doss, Garner, and Stewart are all entitled to qualified immunity; and (6) Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e. (Docket Entry No. 173).

As to Defendants Bell, Bossow, Rader, Doss, Garner, and Stewart, Plaintiff contends that: (1) Defendant Bell is liable under § 1983, not on a respondeat superior theory, but rather on the basis that he failed to train the correctional officers under his command in proper cell extraction technique; (2) Defendant Bossow is liable because he failed to intervene to stop his fellow correctional officers from beating Plaintiff; (3) Defendant Garner is likewise liable for his failure to intervene; (4) a material issue of fact exists as to whether Defendants Doss, Rader, and Stewart subjected Plaintiff to excessive force or could have prevented their fellow officers from using excessive force; (5) Plaintiff suffered an injury of sufficient severity to support a claim of excessive force under the Eighth Amendment and Defendants Doss, Rader, and Stewart violated a clearly established constitutional right, and are therefore not entitled to qualified immunity;[1] and (6) Plaintiff did, in fact, exhaust his administrative remedies by filing a grievance with the RMSI grievance office, who deemed the grievance "non-grievable" and thereby exhausted Plaintiff's administrative remedies. (Docket Entry No. 200, at 11-20).

For the reasons set forth below, the Court concludes that both Defendant Bryan Baldwin's

---

[1] Because Plaintiff argues that all of the arguments found after page 20 of the Defendant's memorandum in support should be ignored because the memorandum exceeds the 20 page limit set by the Court, Plaintiff responds summarily to the Defendants' qualified immunity response, offering only a conclusory statement that the defense should be rejected because "the Defendants violated a clearly established constitutional right." (Docket No. 200, 19 n.1).

3

motion for summary judgment (Docket Entry No. 161) and the motion to dismiss or for summary judgment of Defendants Ricky Bell, James Bossow, Gaelan Doss, Gregory Garner, Joel Rader, Jr. and Sean Stewart (Docket Entry No. 173) should be denied. None of the Defendants is entitled to summary judgment as significant material factual disputes exist and preclude a determination regarding the defenses asserted by the Defendants.

## A. Review Of The Record[2]

The events that give rise to this action occurred on Monday, May 31, 2010, while Plaintiff was an inmate in the Tennessee Department of Correction's Riverbend Maximum Security Institution ("RMSI"). (Docket Entry No. 164-2, at 13-15). Inmates at RMSI were, as of May 31, 2010, confined to their cells 23 hours a day and were allowed one hour of exercise in an enclosed outdoor cage per day, weather permitting. Id. at 15-16. Plaintiff was housed in Unit One within RMSI. Id. at 15. Inmates in Unit One were typically allowed to shower on Mondays, Wednesdays, and Fridays. (Docket Entry No. 164-1, at 49-50). On Monday May 31, 2010, however, the inmates were not permitted to shower. Id. The day in question was a holiday, resulting in a shortage of correctional officers and a consequent lack of sufficient guards to remove inmates from their cells and escort them to the showers. Id.

Many of the inmates in Unit One were unhappy about being denied showers. (Docket Entry No. 201-7, at 42). One of the inmates in Unit One, Ryan Honeycutt, began throwing liquids at staff

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed. R. Civ. P. 56(d).

4

through a flap in the door to his cell. Id. at 27. In response to inmate Honeycutt's throwing of liquids from his cell, Defendants Bossow, McCall, and Rader, as well as correctional officer Stephen Rayno, entered his cell, with the stated purpose of removing from the cell so-called "hard items" that could be used to throw liquids at the prison staff. Id. at 27-28. While the correctional officers were inside inmate Honeycutt's cell, a physical altercation occurred and inmate Honeycutt was injured. Id. at 38. Plaintiff was able to see into inmate Honeycutt's cell from within his own cell. Id. at 31.

Plaintiff asserts that after witnessing the Honeycutt incident, he decided to throw cold coffee at prison staff through the flap in his cell door, knowing that staff would report the incident and summon a senior prison official, to whom Plaintiff could report the Honeycutt incident. (Docket Entry No. 201-1, at 17-20). Plaintiff's account is disputed, with at least some of the Defendants stating that Plaintiff made no mention of a desire to report the Honeycutt incident. (Docket Entry No. 201-7, at 44).

According to Plaintiff, Defendant McCall approached his cell with three other officers and asked Plaintiff to place his hands through the flap in his door and be handcuffed, so that the officers could enter his cell and remove his personal items. (Docket Entry No. 201-1, at 20). Plaintiff refused to be handcuffed, and claims that he told Defendant McCall and the officers accompanying him that if they returned with the captain and a video camera, he would allow the officers to handcuff him and enter his cell. Id. at 21-22. Plaintiff states that his refusal to allow Defendant McCall and the officers accompanying him into his cell was a result of his fear that the officers would injure him in the same manner that they had injured inmate Honeycutt. Id. at 22.

According to Plaintiff, approximately 45 minutes after he refused to allow Defendant McCall and his fellow officers to enter his cell, Defendant Baldwin came to his cell accompanied by

5

Defendants Garner and Bossow, as well as a "cell extraction team" consisting of Defendants McCall, Doss, Rader, and Stewart, as well as correctional officer Stephen Rayno. (Docket Entry Nos. 201-1, at 24; 164-6, at 49-50). Plaintiff offered, given that the video camera and Defendant Baldwin were present, to allow himself to be handcuffed. (Docket Entry No. 201-1, at 25). Defendant Baldwin instructed Plaintiff to kneel with his hands behind his back and face the wall of his cell, and Plaintiff complied. Id. At that point, the cell extraction team entered Plaintiff's cell. Id. at 26.

What occurred after the cell extraction team entered Plaintiff's cell is in dispute, and is ultimately a question of fact for the jury. According to Plaintiff the members of the cell extraction team began punching and kicking him; that he was shocked with one of the Defendants' electrical shield; that after he was handcuffed and shackled he was pushed into the window of his cell resulting in a gash on his forehead that required treatment at a hospital; that after this physical beating he was removed from his cell and forced to walk to the infirmary; and that on the way to the infirmary he was thrown to the ground by members of the cell extraction team, resulting in additional injury. (Docket Entry No. 201-1, at 26, 35, 40-42).

Defendant Doss's testimony is that none of the Defendants punched or kicked Plaintiff; Plaintiff was not shocked with Defendant Goss's electrical shield; that Defendant McCall pushed Plaintiff's head into the wall of his cell; and that Plaintiff was forced to the ground in the course of moving him to the infirmary because he was preparing to spit blood at the Defendants. (Docket Entry No. 164-6, 42, 48, 51, 54 ). Defendant Stewart likewise testified that none of the Defendants punched or kicked Plaintiff and that McCall pushed Plaintiff into the wall. (Docket Entry No. 164-4, at 46). Defendant Bossow also testified that none of the Defendants kicked or punched Plaintiff. (Docket Entry No. 164-5, at 52).

6

The record reflects that following the cell extraction, Plaintiff was transported to a hospital outside of the prison to receive treatment for injuries he sustained in the course of the cell extraction. (Docket Entry No. 164-5, at 57).

## B. Conclusions Of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

7

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving

8

party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed

9

verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict --</u> "<u>whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>"

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshaling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshaling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means

10

simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

11

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Forty-two United States Code Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. West v. Atkins, 487 U.S. 42, 48 (1988). The two essential elements of a claim a Section 1983 claim are: (1) whether the conduct complained of was committed by a person acting under color of state law; and

(2) whether the conduct deprives a person of rights, privilege, or immunities secured by the Constitution or laws of the United States. Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). Here, Defendants, TDOC officers and employees, qualify as state actors.

As to the defendant's qualified immunity defense, qualified immunity grants immunity from damages for government officials performing discretionary functions. Blake v. Wright, 179 F.3d 1003, 1007 (6th Cir. 1999). Government officials acting in their official capacities are not liable for civil damages, if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.").

While Defendants bear the burden of pleading qualified immunity as an affirmative defense, Plaintiff must show that Defendants are not entitled to qualified immunity. Blake, 179 F.3d at 1007. To overcome the qualified immunity defense, a Section 1983 plaintiff must show that the right was clearly established at the time of the violation, Harlow, 457 U.S. at 818, and that "the contours of [the clearly established] right ... [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640.

From the parties' evidence, the Court cannot determine whether any of the Defendants in this action is entitled to qualified immunity. Whether any of the Defendants in this action is entitled to qualified immunity turns on whether a reasonable person would have known that the actions of the Defendants would violate the Plaintiff's right to be free from cruel and unusual punishment under

the Eighth Amendment. Resolving this inquiry requires determining the Defendants' actions in the course of removing Plaintiff from his cell on May 31, 2010. The record, as summarized supra, reflects a material factual dispute regarding the actions of the Defendants on that day. This dispute must be resolved by the finder of fact to determine if any of the Defendants are entitled to qualified immunity. Therefore the Defendants are not entitled to summary judgment on the basis of qualified immunity.

Material factual disputes also exist as to whether Defendants Baldwin, Garner, Bossow, Doss, Rader, Stewart, and Gardner are liable for failure to intervene in the use of excessive force against Plaintiff, and whether they could have prevented the use of force by Defendant McCall, whom these Defendants contend was the only Defendant to physically strike Plaintiff. Plaintiff asserts that he was punched and kicked by multiple officers, as well as shocked with an electrical shield carried by Defendant Doss. (Docket Entry Nos. 164-2, at 27, 40; 164-6, at 39). The Sixth Circuit has held, in a case with facts nearly identical to those in the record presently before the Court, that "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir. 1990). In McHenry, the jury found that a single correctional officer beat an inmate, but other defendant correctional officers were nonetheless found liable because they did not intervene to protect the inmate from the assault. Id. The Sixth Circuit affirmed the district court's denial of the defendants' motion for a judgment notwithstanding the verdict or for a new trial, holding that even the officers who did not beat the inmate owed him a "duty of protection." Id. The Sixth Circuit also cited as evidence in support of the jury's finding of liability on the part of the defendants who did not actively beat the plaintiff the fact that "all of the defendants were aware that [the plaintiff] would

14

be assaulted," and the fact that the plaintiff testified that "he was unsure which officers hit him." Id. Thus, the record presently before the Court is not sufficient to determine which, if any, of the Defendants struck Plaintiff, and whether those Defendants who may not have struck Plaintiff are nonetheless liable for their failure to intervene. These matters must be resolved by the finder of fact at trial.

As to Defendant Bell, a supervisory official can be held liable under § 1983 for failure to properly train employees. In the context of police training, the Supreme Court in City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989), held that a failure to train employees can be a basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." The Sixth Circuit has applied the deliberate indifference standard for supervisory liability articulated by the Supreme Court in Harris to the failure to train prison guards. Walker v. Norris, 917 F.2d 1449, 1456 (6th Cir. 1990). In Walker, the Sixth Circuit affirmed the district court's order granting a directed verdict in favor of the defendants on the plaintiff's failure to train claim, holding that "reasonable jurors could only conclude that the supervisors' failure to train the corrections officers did not rise to the level of deliberate indifference." Id. Here, Defendant Bell may be liable for failure to train the Defendant corrections officers, if such failure to train amounts to "deliberate indifference." The parties' evidence reflects that the Defendant correction officers received very little training in cell extractions, and in some cases, did not receive the four hours of annual training in cell extractions required by RMSI's own policies. (Docket Entry No. 164-4, at 14-18; 164-6, at 13-22). Defendant Bell's testimony reflects that RMSI ceased on-site training for cell extractions completely in 2007, and that Defendant Bell was unaware if the Defendant corrections officers received their required annual cell extraction

15

training in the years 2008-2010. (Docket Entry No. 164-3, at 38-40). These facts preclude a determination of whether Defendant Bell was deliberately indifferent in his failure to train the Defendant corrections officers at RMSI. This issue is properly a question for the jury.

Finally, this Court finds that Plaintiff did not fail to exhaust his remedies as to Defendants Bell, Bossow, and Garner as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. In <u>Jones v. Bock</u>, 549 U.S. 199, 199 (2007), the Supreme Court of the United States rejected the Sixth Circuit's procedural rules that had required plaintiffs to allege and demonstrate exhaustion in their complaint. The <u>Bock</u> Court held that "[e]xhaustion is not <u>per se</u> inadequate under the PLRA when an individual later sued was not named in the grievance." <u>Id.</u> at 200. The Court further held that "The 'applicable procedural rules' that a prisoner must properly exhaust... are defined not by the PLRA, but by the prison grievance process itself," and found that because the prison grievance policies in that case made "no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." <u>Id.</u> at 200-201.

Here, the TDOC grievance policy at the time of Plaintiff's grievance did not require naming of particular officials, and in fact does not provide for naming individual officers. (Docket Entry No. 176-2). The TDOC policy only required an inmate to provide "specific details" of the incident giving rise to the grievance. <u>Id.</u> The grievance form filed by the Plaintiff identifies Defendant Garner by name, and identifies the cell extraction team, of which Defendant Bossow was a member. (Docket Entry No. 1-1). The inmate grievance response form is signed by Defendant Warden Bell. <u>Id.</u> Therefore, the Court concludes that Defendants Bell, Bossow, and Garner are not entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies against them. Plaintiff's grievance was timely filed, as the incident occurred on May 31, 2010, and Plaintiff's

16

grievance is clearly dated June 4, 2010, well within the seven calendar days required by the applicable TDOC policy. (Docket Entry No. 1-1, 3; 176-2).

For these reasons, the Court concludes that Defendant Bryan Baldwin's motion for summary judgment (Docket Entry No. 161) and the motion to dismiss or for summary judgment of Defendants Ricky Bell, James Bossow, Gaelan Doss, Gregory Garner, Joel Rader, Jr. and Sean Stewart (Docket Entry No. 173) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this 23rd day of September, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court.